NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOSEPH C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.C., *Appellees*.

No. 1 CA-JV 17-0581
FILED 5-8-2018

Appeal from the Superior Court in Maricopa County
No. JD529853
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge James B. Morse Jr. and Judge Kent E. Cattani joined.

---

**W I N T H R O P**, Judge:

**¶1** Joseph C. ("Father") appeals the juvenile court's order
severing his parental rights to J.C. Father argues the juvenile court erred in
severing his parental rights based on substance abuse and failure to remedy
the circumstances which caused J.C. to remain in an out-of-home
placement. Father additionally argues severance was not in J.C.'s best
interest. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** Father is the biological parent of J.C., born in 2016.[1] At birth,
J.C. tested positive for cocaine and the Department of Child Safety ("DCS")
immediately took custody of J.C.[2] In addition to testing positive for cocaine,
J.C. was born with numerous medical disabilities, which make it unlikely
that she will ever speak or walk. Father briefly visited J.C. in the hospital
after her birth, but he failed to learn how to properly take care of and feed
J.C., who had difficulty eating due to a cleft palate.

**¶3** In April 2016, DCS filed a dependency petition, alleging J.C.
was dependent as to Father on the grounds of neglect and substance abuse.
DCS further alleged Father was unwilling to be J.C.'s primary caregiver and
that he did not have the necessary supplies to care for J.C. Father contested
the dependency, but the juvenile court granted DCS' petition. Then in July
2017, DCS moved to sever Father's parental rights on the same grounds.
DCS further alleged severance was in J.C.'s best interest because it would
allow her to receive appropriate care.

**¶4** Father contested the severance, and an evidentiary hearing
was held in November 2017. At the hearing, Father acknowledged that he

---

[1] The juvenile court previously severed the parental rights of J.C.'s
biological mother, and she is not a party to this appeal.

[2] J.C. has remained in DCS' custody since birth.

had a history of using cocaine for over twenty years. Father testified, however, that he is now motivated to maintain sobriety in order to care for J.C. In support, Father stated that he had maintained sobriety for five months before the final severance hearing and that he had taken steps to ensure that J.C. would be safe in his custody by renting an apartment, purchasing furniture and food, and contacting support groups for raising a child with disabilities.

¶5            DCS acknowledged Father's efforts to improve his living and employment situation and maintain sobriety, but contended that these efforts were insufficient to show Father had overcome his substance dependency. A DCS case manager additionally testified that, in her opinion, Father would be unable to maintain a sober lifestyle because he had relapsed while receiving drug treatment during the dependency and severance proceedings. The DCS case manager further testified that Father had not demonstrated that he understood J.C.'s medical needs or that he was able to care for her given her medical needs. The case manager also testified that although J.C. was not currently in an adoptive placement, the Department of Developmental Disabilities-licensed foster placement (the "DDD non-adoptive foster home") was able to meet J.C.'s physical, educational, medical, and emotional needs.

¶6            The juvenile court took the matter under advisement and ultimately severed Father's parental rights on the grounds of prolonged substance abuse and out-of-home placement for a period of six, nine, and fifteen months, pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(3), (8)(a)-(c) (Supp. 2017).[3] In severing Father's rights due to prolonged substance abuse, the court found that Father "had fifteen months to demonstrate through DCS services that he can maintain long-term sobriety in order to parent the child. He has not done so. DCS has made reasonable efforts to provide reunification for Father []; however, he did not fully comply with those services." The court further found it was in J.C.'s best interest to sever Father's parental rights because J.C.'s medical needs were being met in the DDD non-adoptive foster home.

¶7            Father timely appealed, and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A) (2014); and Arizona Rules of Procedure for the Juvenile Court 103(A).

---

3       We cite the current versions of all applicable statutes because no revisions material to this decision have occurred.

**ANALYSIS**

¶8        On appeal, Father argues the juvenile court erred in finding he was unable to discharge his parental responsibilities because of a history of substance abuse and that there was insufficient evidence to find his history of substance abuse would continue for a prolonged indeterminate period.

¶9        We view the evidence in the light most favorable to sustaining the juvenile court's order and will overturn the court's findings only if they are not supported by reasonable evidence. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). *See also Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) ("The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." (citation omitted)).  Although parents have a fundamental right to raise their children as they see fit, that right is not without limitation. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001).  To sever this fundamental right, a juvenile court must find by clear and convincing evidence that one of the statutory grounds for severance exists. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

¶10        As relevant here, a juvenile court may sever a parent's rights if it finds by clear and convincing evidence "[t]hat the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3).  To find a parent has a history of "chronic" abuse of dangerous drugs, the drug usage need not be constant, but must be long lasting. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010).  Periods of temporary abstinence from drugs are insufficient to outweigh a parent's significant history of abuse. *Id.* at 379, ¶ 29.  Further, a child's interest in permanency prevails over a parent's uncertain battle with addiction. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016).

¶11        Contrary to Father's argument, reasonable evidence supports the juvenile court's findings.  The record reflects that Father has an extensive history of substance abuse.  Although Father maintained sobriety for five months before the final severance hearing, overall Father was only able to maintain sobriety for a nonconsecutive ten-month period during the twenty-month dependency and severance proceedings.  Moreover, Father's

successful completion of certain reunification services was of no avail in helping him maintain sobriety. On this record, the court did not abuse its discretion in severing Father's parental rights based on his history of substance abuse and the likelihood that his substance dependency would continue.[4]

¶12     Father also challenges the juvenile court's finding that severance was in J.C.'s best interest. To sever a parent's rights, the court must find by a preponderance of the evidence that severance is in the best interest of the child. *Michael J.*, 196 Ariz. at 249, ¶ 12. Here, the court found that J.C. will benefit from severance and that any continued relationship with Father would result in harm. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) (finding a court must either find that a child will affirmatively benefit from the severance or that a continued relationship with a parent will harm the child). The court found that Father was unable to demonstrate that he could maintain sobriety. Further, the court found that Father had not sufficiently participated in J.C.'s medical care and that Father had not demonstrated sufficient knowledge of J.C.'s medical needs. Although J.C. is not currently in an adoptive placement, she is placed in a DDD non-adoptive foster home, which is meeting her medical needs and providing her with a safe and stable environment.

## CONCLUSION

¶13     The juvenile court's order severing Father's rights to J.C. is affirmed.

AMY M. WOOD • Clerk of the Court
FILED: AA

---

[4]     We do not address Father's arguments that the juvenile court abused its discretion in severing his parental rights pursuant to A.R.S. § 8-533(B)(8)(a)-(c) because we find severance was proper based on A.R.S. § 8-533(B)(3). *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." (citation omitted)).