NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TRAVIS H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.H., *Appellees*.

No. 1 CA-JV 18-0353
FILED 3-21-2019

Appeal from the Superior Court in Mohave County
No.   S8015JD201600016
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Mohave County Legal Defender's Office, Kingman
By Eric Devany
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Michael J. Brown joined.

---

**P E R K I N S**, Judge:

¶1 Travis H. ("Father") appeals the superior court's order terminating his parental rights to his child, A.H. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In April 2013, police arrested Father for theft and drug offenses. In September, when Danielle I. ("Mother") gave birth to A.H., Mother and baby both tested positive for methamphetamine. The court eventually terminated Mother's parental rights, and she is not a party to this appeal. The Department of Child Safety ("DCS") became involved with the family and offered them in-home services.

¶3 Only three months later, A.H. received a black eye while in the parents' care, and their explanation did not account for his injury. Mother's eight-year-old daughter told authorities that the parents engaged in ongoing domestic violence, but the parents admitted only to verbal fights. Consequently, DCS took custody of A.H. In the ensuing dependency, Father missed several required drug tests and tested positive for methamphetamine and THC on a few more occasions, but participated in supervised visits with A.H. DCS eventually placed A.H. with his grandmother ("Grandmother"). In January 2014, Father was arrested for driving while intoxicated to the slightest degree.

¶4 Six months later, Father pled guilty to theft, possession of methamphetamine, and aggravated driving under the influence of methamphetamine. In September 2014, the Mohave County Superior Court sentenced him to five years in prison. Over the next year, Grandmother brought A.H. to visit Father in prison every weekend.

¶5 Meanwhile, Mother regained custody of A.H.; in September 2015, the court dismissed the dependency. Three months later, Father was transferred to another prison. Mother relapsed on methamphetamine, heroin, and morphine, and left A.H. with inappropriate caregivers. As a result, in March 2016, DCS took custody of him and filed a renewed

dependency petition. The court found A.H. dependent, and DCS eventually placed him back with Grandmother. Thereafter, as Father later testified, Grandmother brought A.H. to visit Father about once "every couple of months." DCS did not offer Father services during his incarceration. He completed fourteen occupational and self-improvement classes, however, and was scheduled for early release in December 2018.

¶6 In March 2018, DCS moved to terminate Father's parental rights under the length-of-felony-sentence ground. The superior court held a contested termination hearing on July 30. At the end of the hearing, the superior court granted the motion and later issued its signed Findings of Fact, Conclusions of Law, and Order. Father timely appealed the order.

## DISCUSSION

¶7 Father argues that insufficient evidence supports the superior court's order. Because reasonable evidence supports both the length-of-sentence termination ground and the best-interests finding, we affirm.

¶8 We view the evidence in the light most favorable to sustaining the juvenile court's findings. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We accept the juvenile court's findings of fact unless no reasonable evidence supports them. *Id.* If this court determines that reasonable evidence supports one termination ground, it need not consider the remaining grounds. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49, ¶ 14 (App. 2004).

## I.      Statutory Ground

¶9 A parent's rights may be terminated if that "parent is deprived of civil liberties due to the conviction of a felony if . . . the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8–533(B)(4). The court must consider "all relevant factors," including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the

length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251–52, ¶ 29 (2000).

**¶10** Although Father maintained a bond with A.H. during his incarceration, the court found that other factors weighed heavily in favor of termination. The record supports the court's findings.

**¶11** Father's substance abuse and incarceration limited his relationship with A.H. Father parented A.H. for only three months before DCS took custody of him. Over the next nine months, Father participated in supervised visits but struggled to establish sobriety. Once in prison, Father maintained a bond with A.H. through visitation; during these visits, A.H. called him "Daddy" and they played games together.

**¶12** Despite their bond, A.H. was only one year old when Father entered prison. Consequently, for most of A.H.'s life, Father was unable to meet his needs or act as a daily caregiver for him. Father discounts his absence, arguing that Grandmother provided A.H. a normal home when he could not. Our court has held that the obligation to provide a normal home falls upon the parent, not on his or her kin. *In re Appeal in Maricopa Cty. Juv. Action No. JS-5609*, 149 Ariz. 573, 575 (App. 1986). Here, Father did not provide A.H. a normal home after September 2014 and Mother was unavailable to provide A.H. a normal home after March 2016. *See Michael J*, 196 Ariz. at 252 ("availability of *another parent* to provide a normal home life") (emphasis added).

**¶13** Father also argues he was scheduled to "be released within months" of the severance hearing because of his presumptive early release. Commendably, Father completed classes and obtained several certifications, enhancing his chances of obtaining employment upon his release. But, even if released early, Father still needed to serve about five more months to complete his sentence, and, upon release, he would need to establish employment and housing, and participate in DCS services. Thus, considering Father's incarceration and the additional time required to effectively engage in DCS services after his release, A.H. would be deprived of Father's daily parental presence and support for almost five years. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281, ¶ 8 (App. 2002) ("What matters to a dependent child is the total length of time the parent is absent from the family, not the more random time that may elapse between the conclusion of the legal proceedings for severance and the

parent's release from prison."). Finally, although Mother regained custody of A.H. for a short time, she struggled with drug addiction and could not maintain a normal home life for him in Father's absence. In sum, Father's sentence deprived A.H. of a steady parental presence in his formative years. Reasonable evidence supports the termination ground.

## II.     Best Interests

**¶14**          Father next argues that insufficient evidence supports the court's best-interests finding, asserting he nurtured a bond with A.H. and would "be released from custody shortly to reassume his parental obligations." The superior court, however, found that A.H. benefited from severance; reasonable evidence supports that finding. *See id.* at 282, ¶ 12 ("we do not re-weigh the evidence on review").

**¶15**          Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *In re Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (emphasis omitted). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). Although a factor to consider, existence of a bond between the parent and the child is not dispositive of the best-interests issue. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶ 12 (App. 2016).

**¶16**          Here, the superior court acknowledged Father's bond with A.H. but found nonetheless that the child would benefit from severance. Reasonable evidence supports this finding. A.H. had been in an out-of-home placement most of his life, and Father could not provide him with permanency for several more months. Meanwhile, the case manager testified that A.H. has no special needs, is an adoptable child, that Grandmother had been his primary caretaker for several years, was meeting his needs, and wished to adopt him. They had developed a very strong bond; A.H. called Grandmother "mom" and "interact[ed] with her . . . as a child would a mother." *See Demetrius L.*, 239 Ariz. at 4, ¶ 12 (citation omitted) ("When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a

juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests.").

## CONCLUSION

¶17        We affirm the superior court's order terminating Father's parental rights to A.H.



AMY M. WOOD • Clerk of the Court
FILED:  AA