NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

EDAN A., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY; A.A., *Appellees.*

No. 1 CA-JV 18-0454
FILED 4-25-2019

Appeal from the Superior Court in Maricopa County
No. JD32977
The Honorable Jose S. Padilla, Judge

**AFFIRMED**

COUNSEL

Arizona Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Randall M. Howe and Judge Jennifer B. Campbell joined.

**M c M U R D I E**, Judge:

**¶1**            Edan A. ("Father") appeals the juvenile court's order terminating his parental rights to his child, Amal. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**            Father and Salma H. ("Mother")[1] had their first child together, Ameen, in July 2016. Ameen was born exposed to both amphetamines and opiates, and he was taken into DCS custody. Father admitted that he was using opiates and marijuana daily. DCS offered Father drug testing, but he failed to follow through. Father did not attend any of the court hearings because he "didn't even know what [he] was doing half of the time because [he] was on drugs." Subsequently, the court terminated his rights to Ameen in April 2018.

**¶3**            Amal was born in October 2017 and was immediately transferred to the NICU because, like her brother, she tested positive for amphetamines and opiates. Father was present for her birth and participated in a meeting with DCS where he admitted to using heroin. DCS referred Father for drug treatment, but he again declined to participate. Once Amal was released from the NICU in November 2017, DCS placed her with the family that adopted her brother, where she remained at the time of the termination hearing.

**¶4**            DCS, unable to reach Father because the number he provided was disconnected, submitted a *family locate* to obtain a new address and sent Father letters to that address. Father did not have stable housing and was living in different places. DCS was unable to contact Father from approximately December 2017 until he was arrested in April 2018. Father did not attend any court hearings until he was in custody. He testified that

---

[1]        Mother's rights have been terminated and she is not a party to this appeal.

he failed to maintain contact with DCS or attend scheduled court hearings because he was too intoxicated. After speaking with Father at the first hearing, the case manager sent him a letter with the case manager's contact information, but Father never contacted DCS, nor did he write Amal any letters or send financial support.

¶5 In May 2018, DCS moved to terminate the parent-child relationship, alleging: (1) substance abuse; (2) abandonment; (3) prior termination; and in October 2018, DCS amended its motion to add (4) nine-months' time-in-care. At the time of the hearing, Father remained in custody, awaiting trial on seven charges related to various instances of possession of narcotic drugs and theft. He had not seen Amal since her birth and had no relationship with her. Following the hearing, the court granted the termination motion, finding DCS proved by clear and convincing evidence all four statutory grounds and established by a preponderance of the evidence that termination was in Amal's best interests. Father timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶6 We view the evidence in the light most favorable to sustaining the juvenile court's findings. *ADES v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings. *Jesus M. v. ADES*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We accept the juvenile court's findings of fact unless no reasonable evidence supports them. *Id.* If this court determines that reasonable evidence supports one termination ground, it need not consider the remaining grounds. *Mary Lou C. v. ADES*, 207 Ariz. 43, 49, ¶ 14 (App. 2004).

**A.    The Juvenile Court Did Not Err by Finding DCS Proved by Clear and Convincing Evidence Grounds for Termination.**

¶7 To terminate a parent-child relationship, the juvenile court must find at least one statutory ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Here, the juvenile court found sufficient evidence supported termination based on nine-months' time-in-care, substance abuse, abandonment, and prior termination.

¶8 Father's sole argument challenging the sufficiency of evidence supporting the statutory grounds for termination is that the

juvenile court erred by terminating his rights under the nine-months' time-in-care, prior termination, and substance abuse grounds because reasonable evidence does not support the juvenile court's finding that DCS made a diligent effort to provide reunification services. Although the legislature has prescribed that DCS make "a diligent effort to provide appropriate reunification services" under A.R.S. § 8-533(B)(8) (time-in-care), it did not elect to do so under A.R.S. § 8-533(B)(3) (substance abuse) or A.R.S. § 8-533(B)(10) (prior termination). Father concedes that A.R.S. § 8-533(B)(3) and (10) do not explicitly require diligent efforts but argues that our caselaw has held that DCS is nevertheless bound by its constitutional duty to make "reasonable efforts to preserve the family." *See, e.g.*, *Mary Ellen C. v. ADES*, 193 Ariz. 185, 192, ¶ 32 (App. 1999). Thus, we understand Father's argument to be that DCS failed to make reasonable efforts to preserve the family.

**¶9**        However, the court also terminated Father's parental rights based on abandonment, A.R.S. § 8-533(B)(1), and this court has held that there is no constitutional requirement to provide reunification services when a parent has abandoned the child. *See Toni W. v. ADES*, 196 Ariz. 61, 64, 66, ¶¶ 9, 15 (App. 1999) (recognizing the futility in requiring the State to offer reunification services to a parent who has abandoned a child). Father failed to challenge the court's finding that he had abandoned Amal and thus he waived any contention that the court erred by granting a termination on that basis. *See Crystal E. v. DCS*, 241 Ariz. 576, 577, ¶ 5 (App. 2017). Accordingly, we affirm the court's order based on abandonment and need not address the other grounds.[2] *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

---

[2]        *See also Crystal E.*, 241 Ariz. at 579, ¶ 13 (Thumma, J., concurring) ("The waiver issue evidenced in this appeal is one that this court, unfortunately, sees with some frequency. In general, an appeal challenging fewer than all of the statutory grounds for termination the superior court found were proven at trial will not result in a reversal, absent a showing the best interests finding was erroneous. Such an appeal is fatally flawed, from the outset, and merely delays finality.").

**B.      The Juvenile Court Did Not Improperly Rely on Information Outside the Record.**

¶10      Father challenges all grounds arguing that the court committed fundamental error by considering information outside the record "regarding the impact of substance abuse on a parent and services that may be available in jail and personal knowledge, opinions and beliefs regarding services available through the jail and access to drugs while incarcerated."

¶11      The court made the following statement concerning the impact of substance abuse on a person's ability to effectively parent:

> Now think of what would happen if you were with the child and you had to do something during that time frame that would call for saving the child's life? So drugs—even if you are physically there when you are on drugs you are not there. Not to the level that you need—your child needs you to be.

The court was responding to Father's testimony that "[he] was too intoxicated [to show up to court to receive assistance to obtain sobriety]," he was not able to keep track of court hearings and drug treatment services because "[he] didn't even know what [he] was doing half the time because [he] was on drugs," and "sometimes . . . [he] didn't know what [he] was doing and [had] no memory." *See State v. Peralta*, 175 Ariz. 316, 319 (App. 1993) (common-sense considerations based on life experience are a permissible part of the decision-making process). The remaining statements that Father identifies as error relate to the availability of services to an inmate in jail. However, as discussed above, the services DCS offered or Father participated in are not relevant to termination based on abandonment.

**C.      Reasonable Evidence Supports the Juvenile Court's Best Interests Finding.**

¶12      Finally, Father argues that the court lacked sufficient evidence to find that termination was in Amal's best interests. The juvenile court must find termination is in the child's best interests by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 284, ¶ 22. Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . . against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. "[A] determination of the child's best interest

must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. DCS*, 245 Ariz. 146, 148, ¶ 1 (2018). Relevant factors in making this determination include whether the current placement is meeting the child's needs, an adoption plan is in place, and the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4, ¶ 12 (2016).

**¶13**     At the time of trial, Amal was one year old and placed in the same foster home that adopted her brother. The case manager reported that the siblings are close in age and "incredibly bonded." She also testified that the foster parents are the only parents Amal knows; they can meet her emotional, mental health, social, and medical needs; and they are willing to adopt her. The case manager opined that it was in Amal's best interests to remain with her brother in the foster parents' home. The court found that Amal was currently in an adoptive placement that was also a sibling placement and that termination was in her best interests because it allowed for permanency. Father had no relationship with Amal and had not seen her since she was born. We find no error in the court's assessment of the evidence.

## CONCLUSION

**¶14**     Accordingly, we affirm the juvenile court's order terminating Father's parental rights to Amal.



AMY M. WOOD • Clerk of the Court
FILED:  AA