225 P.3d 604

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, S.L., Appellants,**

v.

**MATTHEW L., Appellee.**

**No. 1 CA–JV 09–0141.**

Court of Appeals of Arizona, Division 1, Department A.

March 2, 2010.

Terry Goddard, Arizona Attorney General by Kathleen Skinner, Assistant Attorney General, Mesa, Attorneys for Appellants.

Robert D. Rosanelli, Attorney at Law, Phoenix, Attorney for Appellee.

## OPINION

BARKER, Judge.

¶ 1 The Arizona Department of Economic Security ("ADES") appeals the juvenile court's order denying termination of Matthew L.'s parental rights to his son, S.L. Finding no error, we affirm.

### Facts and Procedural History

¶ 2 On September 17, 2007, Matthew was sentenced to 3.5 years imprisonment after he was convicted of attempted possession of narcotic drugs for sale, a felony. While Matthew was incarcerated, S.L. was born on January 16, 2008. Child Protective Services ("CPS") removed S.L. from the care of his mother, Maria M., on February 20, 2008, when she was arrested for selling illicit drugs. S.L. was subsequently placed in a foster home. CPS learned "Matthew L[.]" was S.L.'s father; however, CPS was not sure if Matthew "[wa]s the correct Matthew L[.]"

¶ 3 On February 25, 2008, ADES filed a dependency petition and petition for paternity alleging Matthew was S.L.'s father. On March 17, 2008, the juvenile court ordered ADES to provide Matthew with a paternity test and psychological counseling if the test showed he was S.L.'s father. ADES completed the paternity testing on October 2, 2008, and learned Matthew was S.L.'s father on October 10, 2008. ADES provided Matthew with a psychological evaluation on October 24, 2008. On December 22, 2008, the court received the paternity results, found S.L. dependent as to Matthew, stated the case plan was family reunification, and ordered S.L. be moved from the foster home and placed in the physical custody of his maternal grandparents in Texas.

¶ 4 While incarcerated, Matthew completed a "Dads 101" parenting class, drug rehabilitation courses, and received a GED. Matthew sent S.L. a birthday card and one letter. Matthew also contacted the CPS case manager multiple times, but the case manager admitted he had "made [no] effort to contact [Matthew]." The case manager never telephoned Matthew, never wrote him a letter, and never contacted him in any other manner.

¶ 5 On February 2, 2009, the case plan was changed to severance and adoption. ADES filed a motion to terminate Matthew's parental rights on March 3, 2009, alleging that his

felony conviction deprives him of his civil rights and his sentence is sufficiently long to deprive S.L. of a normal home for a period of years.[1] ADES also alleged termination of the parent-child relationship was in S.L.'s best interests. After the severance trial, the juvenile court denied termination of Matthew's parental rights because it found (1) Matthew's sentence would not deprive S.L. of a normal home for a period of years and (2) severance was not in S.L.'s best interests. ADES timely appealed.

¶ 6 We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8–235 (2007), 12–120.21 (2003), and 12–2101(B) (2003).

### *Discussion*

■ ¶ 7 We view the facts in the light most favorable to upholding the juvenile court's order. *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2, 181 P.3d 1126, 1128 (App.2008). Termination of parental rights is appropriate only when clear and convincing evidence proves a statutory ground for termination. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12, 153 P.3d 1074, 1078 (App.2007). In addition, a preponderance of the evidence must demonstrate that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). We will not disturb the juvenile court's determination unless reasonable evidence does not support its factual findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App. 1998). "[T]he juvenile court will be deemed to have made every finding necessary to support the judgment." *Maricopa County Juv. Action No. JS–8287*, 171 Ariz. 104, 111, 828 P.2d 1245, 1252 (App.1991) (citations omitted).

¶ 8 A court can terminate the parent-child relationship when "the parent is deprived of civil liberties due to the conviction of a felony ... if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S.

§ 8–533(B)(4) (Supp.2009). Our supreme court has specified six factors the juvenile court should consider when deciding whether a parent's sentence "deprive[s] a child of a normal home for a period of years." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251–52, ¶ 29, 995 P.2d 682, 687–88 (2000). These factors are:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue. After considering those and other relevant factors, the trial court can determine whether the sentence is of such a length as to deprive a child of a normal home for a period of years.

*Id.* These factors are not exclusive, and the juvenile court should "consider all relevant factors" on a case-by-case basis. *Id.*

¶ 9 ADES argues it was error to deny its motion to terminate Matthew's parental rights because no reasonable evidence supported the juvenile court's determination that Matthew's sentence would not deprive S.L. of a normal home for a period of years. Instead, ADES contends clear and convincing evidence of the *Michael J.* factors demonstrated that Matthew's sentence would deprive S.L. of a normal home for a period of years.

■ ¶ 10 The juvenile court's order makes findings but does not make specific findings regarding each *Michael J.* factor. Although ADES contends the juvenile court failed to make the required *Michael J.* findings in its order, there was no error. Unlike when the court orders termination of the parent-child relationship, the court is not required to

---

1. ADES successfully sought termination of Maria's parental rights, but the severance of her rights is not at issue on appeal.

make findings when denying a motion to terminate the parent-child relationship. A.R.S. § 8–538(A), (E) (2007). Therefore, we look to the record to determine whether reasonable evidence supported the juvenile court's order. *See Christy C.*, 214 Ariz. at 451–52, ¶ 19, 153 P.3d at 1080–81 ("When considering the trial court's express findings, we affirm the trial court's order if the facts at trial support the trial court's findings whether or not each supportive fact is specifically called out by the trial court in its findings.").

■ ¶ 11 As to the first factor of length and strength of the parent-child relationship, Matthew did not have a relationship with S.L. on the date of his incarceration because S.L. was born on January 16, 2008, four months after Matthew was incarcerated. Matthew knew Maria was pregnant but did not know if the child was his. Matthew asked for a paternity test and learned he was S.L.'s father in October of 2008.

¶ 12 As to the second factor, ADES contends the parent-child relationship cannot be nurtured during incarceration. The CPS report stated it was "not plausible" for Matthew and S.L. to have physical contact because Matthew was incarcerated. At the severance trial, the CPS case manager testified Matthew had not done anything to establish a parent-child relationship with S.L. and that it was not possible for them to establish and maintain a relationship given S.L.'s age.

¶ 13 However, it took ADES six months to complete the court-ordered paternity testing, and the CPS case manager never contacted Matthew at any stage of the case. Even before confirmation that he was S.L.'s father, Matthew completed the "Dads 101" program and was on a waiting list for another parenting class. Matthew also participated in drug rehabilitation courses and completed a GED program while in prison. Matthew also testified that he sent the CPS case manager a letter early in the case and requested photographs of S.L. multiple times but was not provided with any. Matthew testified that he opposed S.L.'s placement in Texas and wanted S.L. to stay in Arizona with his friend, who had custody of Matthew's daughter. Matthew's friend already transported Matthew's daughter to the prison every one or two months for visitation and was willing to bring S.L. for visits too.

¶ 14 As to the third factor of S.L.'s age and the likelihood Matthew's incarceration will deprive S.L. of a normal home, S.L. was born on January 16, 2008, and will be almost three years old at the expiration of Matthew's sentence. Matthew acknowledged S.L. had been deprived of his parenting but felt seeing S.L. every one or two months in prison would provide parental contact.

¶ 15 As to the fourth factor of the length of sentence, Matthew was sentenced to 3.5 years in prison, and his maximum release date is November 29, 2010. Matthew testified that he had started release procedures and would be released from prison as early as December 2, 2009.[2] ADES argues Matthew's anticipated release date was irrelevant evidence based on our court's decisions in *Jesus M. v. Arizona Department of Economic Security*, 203 Ariz. 278, 281, ¶ 8, 53 P.3d 203, 206 (App.2002), and *James S. v. Arizona Department of Economic Security*, 193 Ariz. 351, 354 n. 3, ¶ 12, 972 P.2d 684, 687 n. 3 (App.1998). However, our supreme court gave the juvenile court broad discretion to consider "the length of the sentence" and "all relevant factors." *Michael J.*, 196 Ariz. at 251–52, 995 P.2d at 687–88. The supreme court specified "incarceration"—which is the period of time from imprisonment until release—as part of the inquiry under other *Michael J.* factors. *Id.* As long as the juvenile court considers the length of sentence, we find no error for it to also consider the anticipated release date. Here, the juve-

---

2. Information in the record from the Arizona Department of Corrections indicated Matthew was eligible for supervised release on March 2, 2010. Pursuant to A.R.S. § 31–285, an inmate may be released three months earlier than the earliest release date if the inmate enters a transition program. A.R.S. § 31–285(A) (Supp.2009).

Matthew testified that he has been on good behavior and has been attending programs. Therefore, it is possible Matthew was released on December 2, 2009. The facts of record do not disclose whether or when he actually was released.

nile court properly considered both in making its determination.

¶ 16 As to the fifth factor regarding the availability of another parent, Maria is incarcerated, and the juvenile court terminated her parental rights after she did not contest severance.

¶ 17 As to the sixth factor of the effect of deprivation of a parental presence on S.L., Matthew acknowledged S.L. has been deprived of his parenting but thought prison visits would provide S.L. with contact. Matthew also testified he wants custody of S.L. upon his release from prison.

¶ 18 The parties presented this evidence at the severance trial, and ADES provided the juvenile court with a copy of the *Michael J.* decision. The juvenile court was required to weigh the *Michael J.* factors and all other relevant factors. Not only do we presume the court did so, but reasonable evidence supported its determination. Matthew asked for pictures and requested that his friend be permitted to bring S.L. for visits to the prison,[3] but ADES never contacted Matthew. Matthew also completed a parenting class. Matthew plans to parent S.L. upon his release from prison. Despite no assistance from ADES, Matthew has been doing what he can while incarcerated to build a relationship with S.L. Accordingly, reasonable evidence supported the juvenile court's determination that Matthew's sentence will not deprive S.L. of a normal home for a period of years.

¶ 19 Some evidence did favor severance, but "there is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance." *Christy C.,* 214 Ariz. at 450, ¶ 15, 153 P.3d at 1079. The trier of fact "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.,* 209 Ariz. 332, 334, ¶ 4, 100 P.3d 943, 945 (App.2004). The juvenile court stated:

> [I]t was a close call in this case for me. I mean, I understand all your respective positions, but I just do want to give [Father] a chance under the circumstances, and it still may not pan out. But if it does, then that would be wonderful; and if it doesn't, then we'll just have to proceed accordingly.

The juvenile court made its determination based on the specific facts presented. When viewed in a light most favorable to its order, reasonable evidence supported the juvenile court's ruling. Thus, we find no error.

¶ 20 ADES also contests the juvenile court's finding that ADES failed to provide Matthew with services because it argues it had no duty to do so. Section 8–533(B)(4) does not require ADES to provide reunification services to a parent.[4] In its order, the juvenile court stated general rules of law but did not make findings applying those rules to the facts. The mere statement of these rules was not erroneous. Moreover, the court's findings that ADES "provided no services or visitation" to Matthew were accurate for the dates specified in the order.

¶ 21 In addition, ADES was under a court-ordered duty to provide Matthew with a paternity test and a psychological evaluation. Although ADES did not have a statutory duty to provide reunification services, this did not prevent the trial court from finding that ADES's six-month delay in administering the paternity test and ADES's failure to communicate with Matthew reflected its desire to terminate Matthew's parental rights. Because reasonable evidence supported the

---

**3.** The case manager testified that Matthew never contacted ADES to request visits with S.L. Matthew did not specifically testify that he telephoned ADES or sent a letter to ADES requesting visits with his son. However, Matthew did testify that he attempted to arrange for his friend to bring S.L. to the prison for visitation but "CPS wouldn't allow it." In addition, before ADES filed the motion to sever, Matthew wrote a letter to the juvenile court opposing placement of S.L. in Texas because he preferred for S.L. to be placed with his friend in Arizona. If S.L. had been placed with his friend, she would have transported S.L. and Matthew's daughter to the prison for visits. The case manager was aware of Matthew's request for S.L. to be placed with his friend.

**4.** In *James H. v. Arizona Department of Economic Security,* 210 Ariz. 1, 106 P.3d 327 (App.2005), we found that there was no constitutional duty to provide reunification services for a severance based on A.R.S. § 8–533(B)(4). *Id.* at 2–3, ¶¶ 9–10, 106 P.3d at 328–29.

juvenile court's determination that Matthew's sentence would not deprive S.L. of a normal home for a period of years, we do not address whether severance was in S.L.'s best interests. *See Maricopa County Juv. Action No. JS–500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990) (A parent's constitutional rights to parent his child "can be overridden only by the combined elements of statutorily defined improper behavior by the parent and the child's best interests.").

### Conclusion

¶ 22 For the foregoing reasons, we affirm the juvenile court's order denying termination of Matthew's parental rights.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge.

PORTLEY, Judge, specially concurring.

¶ 23 I concur that the juvenile court did not abuse its discretion when it denied the motion to terminate Father's parental rights based on the standard of review.

¶ 24 Arizona's current economic and budget conditions have created hardships for A.D.E.S., Child Protective Services and its case managers. Budget cuts have reduced resources and personnel in a time when more and more children are at risk and child welfare caseloads are rising. The work is hard and demanding; just trying to meet the statutory demands and paperwork from the time a child is removed to dependency to implementing myriad case family reunification case plans to pursuing permanency is exhausting, without considering the time it takes to respond to the lawyers for the various parties and any CASA, preparing for and attending Foster Care Review Board reviews and additional periodic court hearings. Morale must be sinking as more demands are made on smaller staff, while the hard work and contribution of case managers to protecting children and reuniting families is not appropriately appreciated.

¶ 25 The economy or demands of the job, however, should not be an excuse for not communicating with any parent in prison. It is important to communicate with any parent who wants to discuss their case or children because the parent may have family or other resources to assist in the child's permanency. Similarly, communicating with a parent may assist a case worker to assess the parent's desire to parent, his/her ability to parent, as well as using the opportunity to discuss the child's permanency.

¶ 26 Although a focus on the child's sense of time, *see* J. Goldstein, A. Freud, & A. Solnit, Beyond the Best Interests of the Child, (Free Press, 1973), at 40–42, and need for permanency with a caring adult could have resulted in a different ruling, no Arizona appellate court has ever opined that any specific prison term is, as a matter of law, a sufficient basis to terminate parental rights. *See e.g., James H. v. Ariz. Dept. of Econ. Sec.*, 210 Ariz. 1, 3, ¶ 13, 106 P.3d 327, 330 (App.2005) (Norris, concurring). As a result, the mere fact that a parent is in prison should not prompt any case manager to dismiss any parent's attempt to communicate about the child, placement, case plan, or the child's permanency.