NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHRISTINE F., *Appellant,*

*v.*

RYAN C., C.C., B.C., D.C., *Appellees.*

No. 1 CA-JV 17-0189
FILED 3-27-2018

Appeal from the Superior Court in Yuma County
Nos. S1400JS20160075
S1400JS20160076
S1400JS20160077
The Honorable Mark Wayne Reeves, Judge

**AFFIRMED**

COUNSEL

Mary Katherine Boyte, PC, Yuma
By Mary K. Boyte Henderson
*Counsel for Appellant Christine F.*

Elizabeth Brown Attorney at Law, Goodyear
By Elizabeth Brown
*Counsel for Appellee Ryan C.*

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Paul J. McMurdie joined.

C A M P B E L L, Judge:

¶1            Christine F. ("Mother") challenges the juvenile court's order denying the termination of the parental rights of Ryan C. ("Father") to C.C., D.C, and B.C. born in 2005, 2009, and 2010, respectively. Because Mother has shown no error, we affirm the order.

## FACTS AND PROCEDURAL BACKGROUND

¶2            The juvenile court finalized Mother and Father's divorce in 2012. In the divorce decree, the court granted Mother primary custody of the children and Father reasonable visitation as mutually agreed upon. The court ordered Father to pay child support and a portion of uninsured medical expenses, and to provide medical insurance through his employer. Mother remarried in June 2012.

¶3            Father was in the military and points to his military service commitment as the reason he saw the children only three times in person between July 2012 and August 2015. He communicated with the children occasionally via Skype calls. He sent his children cards and gifts, albeit infrequently and irregularly. Although there were some reduced payments, Father paid child support by automatic wage deduction every month and continuously provided medical insurance for each child through his employment.

¶4            In 2015, the youngest child became gravely ill. He was diagnosed by doctors at the Phoenix Children's Hospital with pre-B acute lymphoblastic leukemia. During the initial illness and hospitalization Mother struggled to coordinate continuous insurance coverage through Father's insurance provider and many times was unable to reach Father to provide Mother assistance in obtaining coverage.

¶5            Mother filed a private petition to terminate Father's parental relationship with the children on February 23, 2016. Mother alleged Father abandoned the children by failing to provide reasonable support and maintain regular contact with the children. The court also permitted Mother

to amend her petition to terminate Father's parental rights to add a neglect allegation. Mother's current husband, also enlisted in the military, was ready and willing to adopt the children upon termination of Father's rights.

¶6　　　　On August 10, 2016, Mother sought an emergency order asking for the children's medical coverage to be sponsored by her husband because Father failed to authorize continued enrollment with the youngest child's primary care provider. The lack of authorization led to the denial of coverage for the child's ongoing cancer treatment. Father failed to appear for the emergency hearing, and the juvenile court authorized Mother's husband to sponsor the children's insurance coverage, eliminating the need for Father's participation in the ongoing authorization process for insurance coverage for the child.

¶7　　　　The juvenile court held a contested severance hearing in November 2016 and February 2017, and denied Mother's petition on March 30, 2017.

## DISCUSSION

¶8　　　　Mother raises several arguments contesting the juvenile court's conclusion that the statutory grounds for termination had not been proven by clear and convincing evidence.[1] She also appeals the court's failure to find that termination of Father's parental rights would serve the best interests of the children.

¶9　　　　A court may sever a parent's rights if it (1) finds by clear and convincing evidence one of the statutory grounds for severance, and (2) finds by a preponderance of the evidence that severance is in the child's best interests. *See* Arizona Revised Statutes ("A.R.S.") §§ 8–533(B), –537(B)[2]; *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, 288, ¶¶ 7, 41 (2005). Here, the court found that it was not in the children's best interests to sever Father's parental rights. Accordingly, because we conclude reasonable evidence

---

[1] Specifically, Mother argues the juvenile court erred by: (1) applying the incorrect burden of proof on the ground of abandonment, (2) using an incomplete definition of abandonment, and (3) applying an unduly restrictive definition of neglect.

[2] We cite to the current version of all statutes and rules in the decision, which have not been amended since Mother petitioned to terminate Father's parental rights.

supports the juvenile court's best interests determination, we need not, and do not, address Mother's arguments concerning the statutory termination grounds.

¶10 We will affirm an order denying a petition to terminate parent's rights unless no reasonable evidence supports the juvenile court's findings. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). Because the juvenile court, "as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court views the evidence and reasonable inferences drawn from it in the light most favorable to sustaining the juvenile court's decision. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citations omitted). In assessing whether severance would be in the best interests of the child, the court must determine "how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juvenile Action No. JS–500274,* 167 Ariz. 1, 5 (1990).

¶11 Mother contends the children would benefit from adoption by her current husband because "he's their dad." Father has not been a model parent, as both he and his counsel acknowledge. His interest and commitment to parenting has been inconsistent and, at times, unhelpful. On this record, the juvenile court could have concluded that, compared to Father, Mother's current husband has been, and likely will be, a better parent to these children. Whether Mother's current husband would be a better father, however, is not the test, *see id.*, and we must defer to the juvenile court's ability to evaluate the credibility of the testimony and other evidence concerning the children's best interests, *Jordan C.*, 223 Ariz. at 93, ¶ 18. Here, the juvenile court specifically found, based upon the evidence presented, Mother failed to prove by a preponderance of the evidence that it was in the children's best interests to sever Father's parental rights. The court further found that Father had made more than minimal efforts to support and communicate with his children and that an involuntary termination of his parental rights was not in their best interests.

¶12 "[W]e do not substitute our judgment for that of the trial court, and will sustain the trial court's ruling on any theory supported by the evidence, even though the trial court's reasoning may differ from our own." *Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 49, ¶ 17 (App. 2013) (citation omitted). Although we do not dispute the stepfather's unwavering dedication and his assumption of a parental role in Father's physical absence, we cannot, on this record, find the juvenile court abused its discretion in concluding that termination of Father's parental rights was not

in the children's best interests. There was sufficient evidence before the juvenile court to support its finding that Father still has a bond with his children. Although Father's conduct demonstrated he was content to allow Mother and stepfather to care for the children, it also demonstrated he wanted to remain involved in the children's lives. Father communicated with the children via Skype on a more or less regular basis. The record is also clear that since Father and Mother separated, he periodically sent letters, cards, and gifts to the children. Additionally, Father continually provided financial support for the children, and, up to August of 2016, also provided medical insurance coverage even if Mother had difficulty accessing the benefit.

¶13        Accordingly, reasonable evidence supports the juvenile court's denial of Mother's petition to terminate Father's parental rights.

## CONCLUSION

¶14        For the foregoing reasons, we affirm juvenile court's order denying Mother's petition to terminate Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA