NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PAULE C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.H., *Appellees*.

No. 1 CA-JV 18-0315
FILED 8-1-2019

Appeal from the Superior Court in Maricopa County
No. JD530310
The Honorable Karen L. O'Connor, Judge

**REVERSED AND REMANDED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

**C A T T A N I**, Judge:

¶1        Paule C. ("Father") appeals from the superior court's order severing his parental rights as to his son, J.H.  Termination was based in part on concerns raised in the late-stage denial of Father's application under the Interstate Compact on the Placement of Children ("ICPC") to have J.H. reside with him in Florida.  Because Father was not allowed an adequate opportunity to address these concerns and thereby avoid severance, we conclude that Father was denied due process.  Accordingly, we reverse the termination of Father's parental rights and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Charlinda H. ("Mother")[1] were living in Florida when Mother left for Arizona.  She was eight months pregnant and alleged domestic violence by Father.  She gave birth to J.H. a few weeks later in September 2016.  J.H. had significant medical issues.  He suffered a stroke in utero, resulting in a large void filled with fluid in the right side of his skull, and a shunt was placed in his head.  He was paralyzed on the left side of his body and suffered from a clotting disorder.  J.H. was also born substance-exposed to marijuana, and the Department of Child Safety ("DCS") took him into care shortly after his birth.

¶3        Mother informed DCS that Father was J.H.'s biological father, and Father, who still lived in Florida, contacted DCS and sought to establish paternity, which he did several months later.  Father also indicated that he would participate in whatever services were necessary to have J.H. placed in his care.

¶4        Based on Mother's allegations, DCS alleged J.H. was dependent as to Father due to domestic violence, substance abuse, and mental health issues.  Father denied the dependency allegations but submitted the issue to the superior court, which found J.H. dependent.

¶5        Because Father lived in Florida, DCS submitted an ICPC application under Arizona Revised Statutes ("A.R.S.") §§ 8-548 to -548.06 to place J.H. with Father.  In March 2017, the Florida social worker who conducted the ICPC evaluation denied Father's application because he had

---

[1]        Mother's parental rights as to J.H. were previously terminated, and she is not a party to this appeal.

not completed services and because two rooms in his house were locked, preventing inspection.

¶6            DCS then began providing Father with reunification services, all of which he successfully completed.   These services included a psychological evaluation, Skype visits with J.H., transportation for in-person visits with J.H. in Arizona, drug testing, and counseling, which included 20 group sessions.   Father also found and paid for counseling services in Florida on his own.   Additionally, he participated in parenting classes, networked with parents of special-needs children, and found resources for children with special needs.

¶7            Father never tested positive for illegal substances, and, consequently, he was not required to drug test after June 2017.   Additionally, DCS was unable to substantiate Mother's claims about domestic violence, so domestic-violence concerns and services were removed from Father's case plan.

¶8            Despite Father's compliance with the case plan, in January 2018 DCS filed a motion to terminate based on Father's failure to file a notice of claim of paternity with Arizona's putative fathers registry.   *See* A.R.S. § 8-533(B)(6).   The next month, however, DCS submitted a second ICPC application.   As of March 2018, DCS's position was that Father "was compliant with all of the DCS services," and DCS was simply waiting for the ICPC to be approved.

¶9            In June 2018, the second ICPC was denied.   The ICPC social worker in Florida expressed several areas of concern, including her belief that Father had not satisfactorily remedied substance-abuse concerns because he refused to submit to one random drug test and had not articulated a robust relapse prevention plan.   The social worker also expressed concern that Father was previously involved in an intimate relationship with Mother's mother before he began his relationship with Mother.   And the social worker noted Father's lack of local support and his lack of a bond with J.H., with whom he had never lived.   Finally, the social worker cited to police records documenting that Mother had twice accused Father of domestic violence in 2016.

¶10           After the second ICPC denial, DCS amended its motion to terminate, adding the severance ground of 15 months' out-of-home placement.   *See* A.R.S. § 8-533(B)(8)(c).   The superior court conducted the termination adjudication hearing over three days in July and August 2018.   The court severed Father's parental rights as to J.H., finding grounds for

termination based on 15 months' out-of-home placement and that severance would be in J.H.'s best interests.[2]

¶11     Father timely appealed. We have jurisdiction under A.R.S. § 8-235(A).

**DISCUSSION**

¶12     Termination of parental rights requires clear and convincing evidence of a statutory ground set forth in A.R.S. § 8-533(B) and proof by a preponderance of the evidence that termination is in the best interests of the child. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). We generally review the superior court's severance ruling for an abuse of discretion, viewing the evidence in the light most favorable to affirming the court's ruling. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). But we review de novo the court's legal conclusions and other questions of law. *Frank R. v. Mother Goose Adoptions*, 243 Ariz. 111, 114–15, ¶ 17 (2017); *Meryl R. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 24, 25, ¶ 4 (App. 1999).

¶13     Parental rights may be severed based on 15 months' out-of-home placement if (1) the child has been in out-of-home placement for at least 15 months, (2) DCS made diligent efforts to provide the parent with appropriate reunification services, (3) the parent has been unable to remedy the circumstances requiring out-of-home placement, and (4) there is a substantial likelihood that the parent will be unable to provide proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(8)(c).

¶14     Because parents have a fundamental liberty interest in the care and custody of their children, the state may only terminate a parent–child relationship if, consistent with the commands of due process, it provides the parent with "fundamentally fair procedures." *See Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982). A fundamentally fair procedure requires DCS to make reasonable efforts to preserve the familial

---

[2]     The superior court also found statutory grounds for severance based on Father's failure to file a notice of claim of paternity with the putative fathers registry. *See* A.R.S. § 8-533(B)(6). DCS did not address this ground in its answering brief, and conceded at oral argument that Father's parental rights could not be terminated on this basis because he in fact established paternity. We accept DCS's concession and thus reverse the superior court's finding of severance grounds under § 8-533(B)(6).

relationship, *see Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191–92, ¶ 32 (App. 1999), which includes undertaking "'measures with a reasonable prospect of success' in reuniting the family." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 94, ¶ 20 (App. 2009) (quoting *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34). Although DCS need not provide every conceivable service to preserve the family, it must either provide the parent with the time and the opportunity to improve his parenting ability or demonstrate that such efforts would be futile. *See Mary Ellen C.*, 193 Ariz. at 192–93, ¶¶ 34, 37, 39.

¶15 The requirement that DCS make diligent efforts to reunite the family relates to its burden to prove that the parent is unfit based on one of the statutory grounds for severance. *Jordan C.*, 223 Ariz. at 96, ¶ 31. Absent such efforts, DCS cannot reasonably assess the parent's progress or determine whether the parent has been unable to remedy the circumstances that necessitated out-of-home placement. *See id.*

¶16 Here, DCS did not allow Father the time and opportunity to remedy the circumstances necessitating the placement. Nor did DCS demonstrate that such efforts would be futile. *See Mary Ellen C.*, 193 Ariz. at 192–93, ¶¶ 37, 39. The court terminated Father's parental rights based on new, late-raised concerns outlined in the second ICPC denial for which Father never received time or services to address. Thus, Father was denied the "fundamentally fair procedure" that due process requires. *See Santosky*, 455 U.S. at 753–54.

¶17 After Father's first ICPC was denied, he remedied the circumstances leading to the denial. Father was also compliant with his case plan, and by March 2018, Father had successfully completed all services.

¶18 Nevertheless, after the Florida social worker denied Father's second ICPC application in May 2018, a few weeks later, DCS (and subsequently the superior court) relied on concerns underlying that denial to support severance even though the concerns had not been raised in Father's case plan. Father was not provided with services to address some of the concerns underlying the ICPC denial, and, in some instances, DCS had even told Father that it did not have a concern. For example, the Florida social worker cited the two police calls Mother made in 2016 alleging domestic violence by Father. But DCS was aware of Mother's allegations and had nevertheless removed domestic violence from Father's case plan. Regarding the social worker's concern about Father's past intimate relationship with Mother's mother, even assuming that this might in some

way bear on Father's fitness as a parent, DCS did not inform Father about this concern. And although the social worker posited concerns about the bond between Father and J.H., DCS noted no such concerns. Father participated regularly in Skype visits, he was never advised he needed to physically visit J.H. more often, and DCS case workers witnessed positive in-person interactions between Father and J.H. Similarly, Father was never advised that he should attend J.H.'s medical appointments in person rather than telephonically.

**¶19** Substance abuse was a common concern both addressed by DCS and offered as a reason for ICPC denial. The Florida social worker cited to Father's refusal to immediately submit to one random drug test at work, as well as his "unsatisfactory" relapse prevention plan. Although Father refused one random drug test requested by the Florida social worker, he submitted a sample just days later and tested negative. And by that point, DCS had for months told Father that he was compliant with his case plan and even stopped requiring drug testing given Father's uniformly negative drug test results. Father had also completed a counseling program that included relapse prevention work, group therapy, and AA meetings. One slightly delayed drug test after Father successfully completed all DCS-mandated substance-abuse services does not constitute clear and convincing evidence that Father was unable to remedy the circumstances necessitating out-of-home placement. *See Jordan C.*, 223 Ariz. at 93, ¶ 18.

**¶20** And even though J.H. had been in foster care for almost two years, DCS did not establish that providing additional reunification services would be futile. *See Mary Ellen C.*, 193 Ariz. at 193, ¶ 39. In fact, Father demonstrated throughout the entire dependency proceeding that additional efforts would not have been futile. He reached out to DCS about J.H. and complied with all DCS requests. He attended every court proceeding, either telephonically or in person, and participated in the Foster Care Review Board meetings. He searched for and found a counseling program that met DCS's requirements. He found a daycare for J.H. designed for children with special needs. He researched J.H.'s medical conditions and spoke with J.H's doctors. And he testified that he was willing to continue participating in services if requested by the court. The only evidence purporting to establish futility was the DCS case worker's testimony that she had never before applied for a third ICPC and was unsure if another jurisdiction would review a third application. But such administrative concerns do not constitute clear and convincing evidence of unfitness to parent or that services would not be helpful.

**¶21** We also note that ICPC approval turns primarily on whether an out-of-state placement is in the best interests of the child. *See* A.R.S. § 8-548, art. I, art. III(d). But parental rights cannot be terminated based on a best-interests determination alone. DCS must first prove by clear and convincing evidence that a parent is unfit under a statutory ground. *See Santosky*, 455 U.S. at 759–61; *Alma S.*, 245 Ariz. at 150, ¶ 9; *see also Donald W. v. Dep't of Child Safety*, No. 1 CA-JV 18-0322, 2019 WL 2181154, at *9, ¶ 42 (Ariz. App. May 21, 2019) ("A denied ICPC alone does not preclude a parent from gaining custody of the child."); *cf.* Vivek S. Sankaran, *Out of State and Out of Luck: The Treatment of Non-Custodial Parents Under the Interstate Compact on the Placement of Children*, 25 Yale L. & Pol'y Rev. 63, 83–87, 89 (2006).

**¶22** In sum, the second ICPC was denied for reasons that Father had already addressed to DCS's satisfaction or that DCS had never raised, much less given Father the "time and opportunity" to remedy. *See Mary Ellen C.*, 193 Ariz. at 192, ¶ 37. Because DCS and the superior court relied on these newly raised concerns to support severance based on 15 months' out-of-home placement—notwithstanding the absence of any opportunity for Father to address and resolve these issues—Father was denied due process, and we thus reverse the termination of his parental rights.

## CONCLUSION

**¶23** For the foregoing reasons, we reverse the order terminating Father's parental rights and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA