NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOSE P., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.P., *Appellees.*

No. 1 CA-JV 20-0406
FILED 4-27-2021

Appeal from the Superior Court in Maricopa County
No. JD34420
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge David B. Gass delivered the decision of the Court, in which Judge Michael J. Brown and Judge David D. Weinzweig joined.

---

**G A S S**, Judge:

¶1        Jose P. appeals a superior court order terminating his parental rights to J.P., his minor child.[1] Because the Department of Child Safety (DCS) made diligent efforts to provide father with appropriate reunification services, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        This court views the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the superior court's termination order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

¶3        J.P. spent the first two months of her life in the neonatal intensive care unit. She was born prematurely (at thirty-two weeks) and required special equipment to feed and care for her. Hospital staff were concerned about parents' ability to care for J.P. if the hospital released her to them. Parents only visited J.P. for short periods of time, when they visited at all, and they repeatedly failed to attend required CPR classes and other training sessions to teach them how to feed J.P. On one visit, mother arrived at the hospital with a facial bruise and parents admitted to having domestic violence issues. When J.P. was ready to leave the hospital, neither mother nor father had learned how to feed and care for her.

¶4        DCS removed J.P. from parents' custody and placed her in a foster home. The superior court found J.P. dependent as to parents, and it identified family reunification as the case plan going forward. Parents agreed to participate in the services necessary for reunification.

¶5        Throughout the dependency, DCS referred father to various reunification services and facilitated father's participation with service providers. These services included individual counseling, psychological

---

[1] The superior court also terminated mother's parental rights. That ruling is not at issue in this appeal.

evaluations, a parent aide for supervised visitation, a case aide, case management, and urinalysis testing.

¶6　　　　Though father participated in the urinalysis—a service offered out of concern for his alcohol use—he did not meaningfully engage in the other services. Father also participated, initially, in individual counseling to address his domestic violence issues, but those services were also closed out for lack of engagement. Father attributed his lack of participation to his work schedule. Father also consistently missed visitations with J.P. and parenting-skills training sessions with the parent aide. Father again blamed his work schedule, even though the parent aide worked to schedule visits to accommodate father. During the sessions father attended, he repeatedly insisted J.P. should eat solid food, despite J.P.'s medical providers telling him she could not.

¶7　　　　Two psychological evaluations were closed out because father did not sufficiently engage and participate. Three years into the dependency, father finally engaged with a psychologist who conducted an analysis and determined father had 4.1-grade-level word reading skills and 3.3-grade-level reading comprehension skills. Though father spoke English, the psychologist recommended services be provided in Spanish "as if he [had] a significant cognitive impairment."

¶8　　　　For a short time after the evaluation, father reengaged in counseling with a Spanish-speaking therapist who knew about and accounted for the psychological evaluation. But father again failed to follow through on his weekly appointments. The parent aide also spoke Spanish and altered services to accommodate father's cognitive abilities. Because of father's lack of engagement, DCS remained concerned about father's understanding of domestic violence, J.P.'s medical needs, and other issues that brought J.P. into DCS's care. DCS moved to terminate father's parental rights based on J.P.'s time in an out-of-home placement. *See* A.R.S. § 8-533.B.8.(a), (c).

¶9　　　　Following a contested severance hearing, the superior court terminated father's parental rights. Father timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A, 12-120.21.A.1, 12-2101.A.1.

## ANALYSIS

¶10　　　　Father only challenges the superior court's diligent-efforts finding, arguing DCS failed to make diligent efforts to provide appropriate reunification services tailored to his cognitive functions, reading levels, and

language abilities. Father, therefore, "has abandoned and waived" any challenge to the superior court's findings on the other elements. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017).

**¶11** As relevant here, to terminate a parent's rights under the relevant out-of-home-placement grounds, DCS must prove by clear and convincing evidence it made "a diligent effort to provide appropriate reunification services." A.R.S § 8-533.B.8; *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 190, ¶ 25 (App. 1999). This obligation requires DCS to "identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019). This court will affirm the superior court's findings if reasonable evidence supports them. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). This court will not reweigh the evidence. *Jordan C.*, 223 Ariz. at 93, ¶ 18.

**¶12** Here, reasonable evidence supports the superior court's findings. DCS identified the causes of J.P.'s out-of-home placement and offered father services to address those issues. Parents' relationship involved acts of domestic violence, so DCS facilitated father seeing a therapist to address domestic-violence issues. DCS also was concerned about father's ability to care for J.P. For example, father ignored the advice of J.P.'s medical providers who insisted she not eat solid foods — even trying to forcefully feed her eggs during a visit. DCS referred father to a parent aide to teach him how to care for J.P.'s particular medical needs, but father said he would disregard the medical advice and feed J.P. solid foods if she were placed in his care.

**¶13** Both the counseling and the parent-aide services had Spanish-speaking providers. The providers knew of father's cognitive abilities and accounted for them when providing services. But father repeatedly failed to engage with these services, causing them to close out and restart when he reengaged. This cycle continued throughout the dependency, during which time father had ample opportunity to engage meaningfully with the provided services to remedy the causes of J.P.'s out-of-home placement. Based on this record, reasonable evidence supports the superior court's finding DCS made diligent efforts to provide father with appropriate reunification services. *See Matthew L.*, 223 Ariz. at 549, ¶ 7.

## CONCLUSION

¶14　　　　We affirm the superior court's order terminating father's parental rights to J.P.



AMY M. WOOD • Clerk of the Court
FILED:　AA