NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DAVONNA T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.H., O.H., *Appellees*.

No. 1 CA-JV 22-0036
FILED 6-21-2022

Appeal from the Superior Court in Maricopa County
No.  JD 40381
The Honorable Robert I. Brooks, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1        Davonna T. (Mother) appeals the superior court's order terminating parental rights to her children, Devyn and Oakley.[1] Finding no error, we affirm.

## BACKGROUND

¶2        In December 2020, Devyn and Oakley were playing at their maternal grandparent's home when Devyn disclosed that Mother's boyfriend put tape around the boys' genitals. The Department of Child Safety (DCS) received an anonymous tip about the incident, and DCS contacted Maricopa County Sheriff's Office (MCSO) to investigate. Both children were examined and neither suffered any injuries from the placement or removal of the tape. Mother reported that her boyfriend taped her sons' genitals because the brothers "were orally stimulating each other" and that this had occurred approximately five times. MCSO determined that there was no evidence that a crime occurred.

¶3        The following month, DCS filed a Dependency Petition and Petition for Paternity and/or Child Support (Out-Of-Home) requesting temporary custody of the children. DCS alleged that the children were dependent because of Mother's abuse and/or neglect, because she failed to protect them from harm and struggled to provide proper care and supervision. The children were placed with their maternal aunt and uncle. Mother was allowed to visit the children under the aunt or uncle's supervision. Mother visited the children infrequently.

¶4        In April 2021 the superior court found the children dependent regarding Mother. Later that month, Mother showed up at the aunt's church unexpectedly and began talking to Oakley. The aunt left the church service with Oakley and Devyn. Mother followed and attempted to grab both children. She yelled that the aunt was trying to "steal" her children. The aunt then filed an order of protection, which prohibited Mother from

---

[1] We use pseudonyms to protect the children's identity.

having contact with the aunt only. As a result of the order of protection, the aunt could not supervise visits between Mother and the children. DCS assigned a service provider to allow Mother to participate in supervised visitation, but this service was cancelled due to Mother's lack of contact.

**¶5** Following the April incident, Mother did not communicate with DCS, nor did she participate in the services offered.[2] In September, the superior court changed the case plan from reunification to severance and adoption. DCS then moved to terminate the parent-child relationship, alleging that Mother abandoned her children, mother failed to maintain a normal parent-child relationship, and the children had been in out of home placement for a period of nine months or longer.

**¶6** In February 2022 the court held a severance hearing where a DCS case manager and Mother testified. The court found two statutory grounds for termination under A.R.S. § 8-533(B): abandonment (§ 8-533(B)(1)) and out of home placement for a period of nine months or longer (§ 8-533(B)(8)(a)). The court also found that maintaining the parent-child relationship would be detrimental to the children and termination was in their best interests. Mother timely appealed.

## DISCUSSION

**¶7** We review a termination order "for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings." *Jessie D. v. Dept' of Child Safety*, 251 Ariz. 574, 579, ¶ 10 (2021). We review legal issues de novo. *Id*. "We view the facts in the light most favorable to upholding the [superior] court's order." *Ariz. Dept' of Econ Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

**¶8** Before the superior court can terminate a parent's rights, it "must find by clear and convincing evidence that a statutory ground for termination exists and that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 18 (App. 2007) (quotation and citation omitted). The court must also find that termination is in the child's best interests by a preponderance of the evidence. *Id.*; *see also* § 8-533(B). Section 8-533(B)(8)(a) establishes a statutory ground for termination when "t]he child has been in an out-of-home placement for a

---

[2] Of the services offered, Mother participated in drug testing to the extent that she called in to the testing facility infrequently and participated in a single drug test.

cumulative total period of nine months or longer . . . and the parent has substantially neglected or wilfully refused to remedy the circumstances" causing the out-of-home placement. In determining whether DCS met its burden, the court must "consider the availability of reunification services to the parent and the participation of the parent in these services." A.R.S. § 8-533(D).

¶9 Mother argues that DCS did not meet its statutory and constitutional obligation to provide her with reunification services, specifically services to assist with housing and financial security. She contends that DCS was aware of other services that could have helped, including Family Connections and Nurturing Parenting, and breached its duty by failing to provide these services. But the DCS case manager explained that these programs were not available to Mother at the time DCS had contact with her. Moreover, DCS provided Mother access to a wide array of services, including referrals for psychological evaluations, parenting services and a parent aide, and substance abuse and treatment services. Reasonable evidence supports the court's finding that the services offered and provided to Mother by DCS were adequate.

¶10 Mother also argues that she was working towards rectifying the circumstances underlying the out-of-home placement. She contends that she actively participated in services and communicated with DCS. Each of the services provided by DCS, however, were terminated due to Mother's lack of participation and communication. The DCS case manager also testified that she attempted to communicate with Mother through email and phone and did not receive a timely response or a response at all. DCS also made attempts to meet Mother in person to explain the services available to her and provided transportation for Mother to participate in services. Nevertheless, Mother continued to not attend her appointments for services. The superior court's finding that Mother failed to remedy the circumstances underlying the out-of-home placement is supported in the record.

¶11 The superior court considered whether to allow Mother more time to participate in services but found that doing so would keep the children in an "indeterminate position." The court found that maintaining the parent-child relationship would be detrimental to the children because it would stall their progress and cause additional trauma. The children had been under DCS care for over a year at the time of the termination hearing and were doing well with their aunt and uncle, who wanted to adopt them. The record supports the court's finding that terminating Mother's parental rights was in the children's best interests.

## CONCLUSION

¶12         We affirm the superior court's order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:    AA