NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SAMANTHA A., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.I., J.I., J.I., K.I., K.I., *Appellees*.

No. 1 CA-JV 19-0203
FILED 12-26-2019

Appeal from the Superior Court in Yavapai County
No. P1300JD201800077
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**C A T T A N I**, Judge:

¶1        Samantha A. ("Mother") appeals from the superior court's order terminating her parental relationship with her five children. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Mother and Kenneth I. ("Father") are the biological parents of C.I., born in 2003, Jo.I., born in 2005, Ja.I., born in 2006, Ke.I., born in 2008, and Ka.I., born in 2009.[1] Mother and Father have a long history of substance abuse and neglecting their children, and the Department of Child Safety ("DCS") has initiated three dependencies. In the prior two dependencies, Mother and Father were reunified with their children after they demonstrated what DCS characterized as at least "[m]inimal compliance" with services.

¶3        Even after those dependencies were closed, DCS continued to receive troubling reports about Mother, Father, and the children. In early 2017, Mother and Father reportedly continued to abuse methamphetamine, and the family's home was filthy and had beg bugs and a lice infestation. Later that year, the children were underfed to the degree that Ja.I. attempted to bring Jo.I. and Ka.I., who had been withdrawn from school, to campus for school lunch. By 2018, Mother's mother ("Grandmother") was caring for the children due to Mother and Father's substance abuse. But Grandmother yelled at and physically abused the children, and the children were regularly exposed to verbal and physical altercations between Mother and Grandmother. Mother later claimed that those fights were her attempts to protect the children from Grandmother.

¶4        Reports of the parents' substance abuse and domestic violence increased, and in mid-August 2018, Ja.I. threatened to kill herself

---

[1]        The court also terminated Father's parental rights, but he is not a party to this appeal.

by taking Grandmother's pills. DCS took the children into care, and the superior court later adjudicated the children dependent.

¶5        DCS offered Mother an array of services, including drug testing and treatment, domestic-violence education, psychological evaluation, individual and family counseling, parenting classes, and visitation. With limited exceptions, Mother failed or refused to engage in services. Although she sporadically participated in supervised visitation, her frequent last-minute cancellations upset the children, and when she did appear for visits, her conduct was at times inappropriate. For example, a parent aide observed Mother hiding what appeared to be a drug pipe in her purse at the beginning of one visit. During that visit, Mother had difficulty staying awake and seemed unable to recognize one of her children. Mother attributed her lack of participation to health and transportation issues, even though DCS provided Mother transportation to services.

¶6        DCS moved to terminate Mother's parental rights based on neglect, chronic substance abuse, and nine months' time-in-care. *See* A.R.S. § 8-533(B)(2), (3), (8)(a). After a contested termination adjudication hearing, the superior court severed Mother's parental rights to all five children, finding all statutory grounds alleged and that termination served the children's best interests. Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

**DISCUSSION**

¶7        To justify termination of the parent–child relationship, the superior court must find that (1) clear and convincing evidence establishes at least one statutory ground for severance, and (2) a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review a severance ruling for an abuse of discretion, deferring to the superior court's credibility determinations and factual findings. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶8        Mother does not contest the superior court's ruling on the statutory grounds for termination; she argues only that the superior court erred by finding severance to be in the children's best interests.

¶9        The best-interests inquiry focuses on the interests of the child as distinct from those of the parent. *Kent K.*, 210 Ariz. at 285, ¶ 31. To find that termination of parental rights is in a child's best interests, the superior court must conclude, based on the totality of the circumstances, that the

child would benefit from severance or be harmed by a denial of severance. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150–51, ¶ 13 (2018). Relevant considerations include the parent's potential for rehabilitation, the child's adoptability, the existence of an adoptive plan, and whether the placement is meeting the child's needs. *Id.* at 148, ¶ 1; *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4, ¶ 12 (2016). The child's stability and security are primary considerations. *Demetrius L.*, 239 Ariz. at 4, ¶ 15.

¶10 Here, the superior court found that the children would benefit from severing the parent–child relationship and that the children would suffer a detriment by maintaining the relationship. The evidence supports these findings. Mother failed to effectively address her substance abuse as well as the domestic violence and neglect to which the children had been exposed despite three different dependency proceedings. This supports the court's finding that continuing the parent–child relationship would be detrimental to the children. *See Alma S.*, 245 Ariz. at 148, 151, ¶ 15. The children are adoptable and are thriving in adoptive placements that meet all their needs, which supports the court's finding that termination would benefit the children by advancing the adoptive plan and providing them with permanency and stability. *See Demetrius L.*, 239 Ariz. at 3–4, ¶ 12.

¶11 Mother argues that the superior court wrongly focused solely on whether the children would be better off in their adoptive placements, without proper regard to her parental interests and without an adequate opportunity for her to achieve reunification. But by the time the court addressed best interests, the court had already found statutory grounds for severance, which relate directly to Mother's interests in continuing to parent the children. *See Demetrius L.*, 239 Ariz. at 4, ¶ 15 ("[I]n considering best interests, the court must balance the unfit parent's 'diluted' interest 'against the independent and often adverse interests of the child in a safe and stable home life.'") (citation omitted); *Kent K.*, 210 Ariz. at 285, ¶ 31 ("Once a court determines that a parent is unfit, the focus shifts to the interests of the child as distinct from those of the parent."). At that point, the superior court properly considered how potential adoption weighed on the children's need for permanency and stability. *See Demetrius L.*, 239 Ariz. at 3–4, ¶ 12. And although Mother faults the court for denying her more time to pursue reunification, the record shows Mother's repeated cycles of neglect and DCS intervention, as well as her failure to meaningfully participate in the reunification services offered. The superior court had ample basis to conclude that the children's best interests would be served by the safety and permanency offered by severance. *See Demetrius L.*, 239 Ariz. at 4, ¶ 15.

¶12 Mother next asserts that, because the children are not placed together, permanently separating the children to be adopted by different families is not in the children's best interests. But "the court does not 'weigh alternative placement possibilities to determine' if severance is in the child's best interests." *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 371, ¶ 2 (App. 2009) (citation omitted). Moreover, here the children have maintained contact with each other and have visited each other regularly despite the separate placements.

¶13 Finally, Mother argues that her strong bond and close relationship with the children means severance was not in the children's best interests. But a bonded relationship, although relevant to best interests, is not dispositive. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016). As described above, reasonable evidence supported the superior court's assessment of the children's best interests, and we do not reweigh the evidence on appeal. *See Jesus M.*, 203 Ariz. at 282, ¶ 12.

**CONCLUSION**

¶14 For the foregoing reasons, we affirm.

