NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANAZI S.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, L.S.,
*Appellees.*

No. 1 CA-JV 20-0262
FILED 5-25-2021

Appeal from the Superior Court in Maricopa County
No. JD532277
The Honorable David King Udall, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra Nahigian
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Jennifer B. Campbell joined.

---

**M O R S E**, Judge:

¶1   Anazi S. ("Father") appeals the juvenile court's order terminating his parental rights to his child, L.S., arguing that the Department of Child Safety ("DCS") failed to make diligent efforts to reunify the family, that his due-process rights were violated, and that termination was not in the child's best interests. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2   "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶3   Father's child was placed in DCS's care in February 2019 based on allegations of neglect, domestic abuse, and Father's incarceration. Father had been assaulted by the child's Mother, who attempted to stab Father while he held the child. When police arrived, they noticed marijuana was within the child's reach. Father was arrested and incarcerated for marijuana possession and a probation violation. The child was eventually found dependent as to Father and the juvenile court set a case plan of family reunification.

¶4   Father was offered numerous reunification services after his release from incarceration, including case-management services, child and family team meetings, parenting classes, transportation, urinalysis testing, visitation, substance-abuse counseling, and domestic-violence counseling. But Father did not fully engage in the services offered. For instance, Father failed to participate in an intake assessment at a counseling facility and never received a psychological evaluation because he could not maintain sobriety.

¶5   The record shows Father took some positive steps towards reunification. He was discharged from substance-abuse counseling after providing a medical marijuana card. And Father occasionally met with the child to attempt to maintain a parental bond. However, Father consistently

failed to attend his parent-child meetings, failed to undergo domestic-violence counseling, and was arrested for allegedly hitting his then-girlfriend, though the charges were eventually dropped.

¶6         Due to Father's failure to address his domestic-violence issues, DCS moved for termination based on abandonment, six months in an out-of-home placement, nine months in an out-of-home placement, and fifteen months in an out-of-home placement. The court held a two-day trial.

¶7         At trial, a DCS case worker testified, providing evidence supporting termination of Father's rights. The case worker also testified about the reunification services provided to Father. In at least one instance the case worker's testimony conflicted with other records, but she yielded to the accuracy of the records when presented with the alleged inconsistency. Notably, the case worker was pressed on whether Father was offered domestic-violence counseling because his counseling records never expressly indicated a referral to domestic-violence services. The case worker clarified that Father was referred for "mental health" services, which "falls under th[e] [domestic violence] category."

¶8         Ultimately, the court denied DCS's petition as to the abandonment ground but granted the petition to terminate Father's rights based on the six, nine, and fifteen months in out-of-home placement grounds. The juvenile court entered findings of fact and conclusions of law supporting its ruling, but copied substantial portions of the fact section from DCS's petition to terminate Father's rights. Because facts had changed after the filing of the petition, the court's findings contained inaccuracies.

¶9         Father timely appealed and argued, in part, that the juvenile court's findings had to be vacated because they contained numerous material misstatements of fact. DCS agreed that the court's findings of fact failed to account for facts that arose after the petition to terminate Father's rights, and asked this Court to stay the appeal so the juvenile court could correct its error. We did so. *See generally Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 537, ¶ 11 n.5 (App. 2018) (noting this Court's discretion to "suspend [an] appeal and revest jurisdiction in the juvenile court for the limited purpose of allowing the court to make the required written findings"); ARCAP 3(b); *see also* Ariz. R.P. Juv. Ct. 103(B). The court then issued corrected findings of fact and conclusions of law. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A).

## DISCUSSION

**¶10** Father argues the juvenile court erred in finding DCS made diligent efforts to reunify the family. He also argues that DCS and the juvenile court violated his due-process rights and that the juvenile court erred in determining termination of Father's rights was in the child's best interests.

**¶11** The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). Termination of parental rights is not favored and "generally should be considered only as a last resort." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 4 (1990). On appeal, we do not reweigh the evidence but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶12** When seeking termination based on six, nine, and fifteen months in out-of-home placement, DCS is required to make diligent efforts to provide the parent with appropriate reunification services. *See* A.R.S. § 8-533(B)(8). DCS meets this obligation by providing the parent with "the time and opportunity to participate in programs designed to help h[im] become an effective parent. . . ." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS is only obligated to provide services that have a "reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999).

**¶13** Father does not dispute that he was offered numerous services but argues DCS did not make diligent efforts because the case-worker's testimony was supposedly rife with inaccuracies and falsehoods. DCS contests Father's characterization of the case-worker's testimony and argues that Father essentially asks this Court to second-guess the credibility determination made by the juvenile court. We agree with DCS.

**¶14** As an appellate court, we do not reweigh the evidence. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018). Father's critique of the case-worker's testimony does not undermine the juvenile court's finding that DCS made diligent efforts to reunify the family. Even if the case worker was mistaken about some details, Father does not dispute that he was offered numerous services, nor does he suggest what more DCS should have done. On this record, we reject Father's argument and affirm the juvenile court's finding that DCS met its burden under the time-in-out-of-home-placement grounds.

¶15 Separately, Father argues his due-process rights were violated because the inaccuracies in the juvenile court's original findings of facts and conclusions of law show that Father could not have received a fundamentally fair trial. He buttresses this argument by again pointing to alleged falsehoods in the case-worker's testimony. But Father misconstrues the record, the testimony in question, and DCS's statements related to the original findings of fact. We have reviewed the record and conclude that the termination proceedings afforded Father a fair and complete chance to be heard. Father's argument is premised on the idea that the errors in the original findings of fact and conclusions of law render the entire termination proceeding constitutionally suspect. Father cites no law in support of his position nor does he acknowledge that the court entered corrected findings of fact and conclusions of law to correct any deficiency in the previous ruling. His argument is without merit.

¶16 Father finally challenges the court's best-interests finding. He claims that because the court erred in finding DCS proved the statutory grounds justifying termination, the juvenile court necessarily erred in making any best-interests determination. Because we affirm the juvenile court's determination that the statutory grounds were proven, we reject Father's best-interests argument.

## CONCLUSION

¶17 For the reasons above, we affirm the juvenile court's termination of Father's parental rights to the child.



AMY M. WOOD • Clerk of the Court
FILED:  AA