NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SABRINA C., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.G., A.G., E.G., A.G., *Appellees.*

No. 1 CA-JV 22-0115
FILED 10-25-2022

Appeal from the Superior Court in Maricopa County
No. JD37384
The Honorable Lori Bustamante, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass joined.

B A I L E Y, Judge:

¶1          Sabrina C. ("Mother") appeals the superior court's order terminating her parental rights to her four oldest children.[1]  Because the court's order is supported by reasonable evidence, we affirm.

FACTS AND PROCEDURAL HISTORY[2]

¶2          Mother is the biological mother of five children: E.M.G., born in 2014, A.L.G., born in 2015, E.L.G., born in 2018, A.M.G., born in 2019, and G.L.G., born in 2021.[3]  In April 2019, while Mother was pregnant with A.M.G., she was arrested for shoplifting and tested positive for methamphetamine and marijuana.  Shortly after, the Department of Child Safety ("DCS") filed a dependency petition, alleging Mother could not properly care for her children because of substance abuse and domestic violence.  Mother pled no contest to the dependency allegations and the court adopted a case plan of family reunification.  Six months later, Mother gave birth to A.M.G, who tested presumptively positive for marijuana at birth.  Shortly after her birth, DCS filed a dependency petition, alleging Mother could not properly care for A.M.G because of substance abuse, domestic violence, unsuitable housing, and mental health issues.  Mother again pled no contest to the dependency allegations, A.M.G was found dependent as to her and the court adopted a case plan of family reunification.

---

[1]      The superior court also terminated father's parental rights, but he is not a party to this appeal.

[2]      We view the facts in the light most favorable to upholding the superior court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

[3]      G.L.G was found dependent in March 2022, a decision Mother does not appeal.

¶3 Throughout the dependency, DCS's safety concerns included unsuitable housing, domestic violence, substance abuse, and mental health issues. For more than six years Mother has lived with Father and the children in a 315 square-foot Winnebago motor home, that lacked running water for much of the dependency. In early 2019, police responded to two domestic violence incidents between Mother and Father. Additionally, in late 2020, a parent aide observed several verbal altercations between Mother and Father.

¶4 In a May 2020 psychological evaluation with Dr. Isbell, Mother disclosed two incidents of trauma: (1) when she was 13 years old her father sexually abused her, and (2) in 2017, her infant child died suddenly. Dr. Isbell diagnosed Mother with dependent and borderline personality traits, unspecified cannabis and stimulant related disorders, and borderline intellectual functioning. He also provided a provisional diagnosis of post-traumatic stress disorder. As a result, he recommended Mother establish sustained sobriety from all substances and engage in at least 6 to 12 months of weekly trauma focused counseling. But he warned Mother was at a high risk for "superficial treatment participation."

¶5 Mother did not begin individual counseling until October 2020 and was successfully discharged three months later. Though DCS provided Mother's counselor with Mother's psychological evaluation, the counseling did not follow Dr. Isbell's recommendations. Thus, DCS remained concerned that Mother had not sufficiently addressed the issues raised by Dr. Isbell, and re-referred Mother for a second round of counseling. Mother re-engaged in counseling and was again recommended for discharge. But DCS noted the counseling again did not address any of Dr. Isbell's concerns and though Mother attended counseling, she was not open about her mental health issues. Mother was not discharged from counseling, and DCS requested she continue with counseling services.

¶6 As for other services, Mother successfully completed a parent aide service, which included supervised visits and parenting skills sessions. Mother successfully completed outpatient substance abuse treatment in November 2020 and a recovery maintenance program in March 2021. Though Mother has not tested positive for methamphetamines since 2019, she continued to use medical marijuana, including while pregnant with G.L.G. She claimed she did not know she was pregnant until October 2021 and stopped using marijuana then. Mother has consistently tested negative for marijuana since October 2021.

3

¶7           Meanwhile, at a March 2021 review hearing, the court changed the case plan to severance and adoption. The children's guardian ad litem then moved to terminate Mother's parental rights to her four oldest children, alleging 9- and 15-month out-of-home placement grounds. The superior court held a termination adjudication over four days in early 2022, after which, the court terminated Mother's parental rights on both grounds alleged. Mother timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶8           Though parental rights are fundamental, they are not absolute. *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 8 (2021). To terminate a parent-child relationship, the superior court must first find a statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence, then find termination is in the children's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150–51, ¶ 8 (2018).

¶9           We review the superior court's decision on a motion to terminate parental rights for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citations omitted).

*I.      15-Month Out-of-Home Placement Ground*

¶10          The superior court may terminate parental rights under the 15-month out-of-home placement ground if it finds by clear and convincing evidence that (1) the children have been in an out-of-home placement for at least 15 months; (2) DCS has "made a diligent effort to provide appropriate reunification services"; (3) "the parent has been unable to remedy the circumstances" that caused the out-of-home placement; and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). The "circumstances" are those "existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children." *Jordan C.*, 223 Ariz. at 96, ¶ 31 n.14 (cleaned up).

4

¶11      Mother argues reasonable evidence does not support the superior court's finding that she failed to remedy the circumstances causing the children's out-of-home placement: unsuitable housing, domestic violence, substance abuse, and mental health concerns.

¶12      Though DCS remained concerned about the Winnebago's suitability as a home for five children, it conceded that at the time of the termination hearing, the Winnebago was "minimally adequate" housing.

¶13      As to domestic violence concerns, at first Mother denied reported instances of domestic violence, but later disclosed Father engaged in domestic violence while under the influence of methamphetamine. While Mother received domestic violence education in counseling, at the time of the termination hearing she had not completed counseling. Nor did Father complete domestic violence counseling, and the record reflects that he displayed a short temper in counseling and continued to harbor anger toward Mother. Despite Father's unaddressed domestic violence concerns, Mother chose to remain in the relationship and to continue living with Father. On this record, the superior court could reasonably conclude Mother failed to fully address the presence of domestic violence in her relationship with Father and its impact on the children.

¶14      Mother argues that because she completed substance abuse treatment, and at the time of the termination hearing had not tested positive for methamphetamines in almost three years and had not tested positive for marijuana in five months, she remedied her substance abuse. But, in 2020, Dr. Isbell recommended that Mother not use any drugs, including marijuana, and establish sustained sobriety because her marijuana use could prevent her from fully addressing her mental health. Mother failed to follow this recommendation for over a year, used marijuana during the first two trimesters of her pregnancy in 2021, and at the time of termination had only been fully sober for five months. The superior court could thus reasonably conclude Mother failed to fully address her substance abuse issues and her brief sobriety preceding the termination hearing was "too little, too late." *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

¶15      Mother participated in individual mental health counseling but failed to complete the 6 to 12 months of weekly trauma focused counseling recommended by Dr. Isbell. The record reflects that her counseling did not address her trauma history or borderline and dependent personality traits. Mother never discussed her trauma with her counselors, and her second counselor noted they were having the "same conversation"

each session, showing Mother was unwilling to fully address her mental health. Indeed, Dr. Isbell testified that based on his review of Mother's counseling records, she had made "minimal progress." Additionally, Mother exercised poor judgement in hiding her pregnancy and G.L.G.'s birth from DCS and failing to obtain proper prenatal care. Reasonable evidence thus supports the superior court's finding that Mother failed to remedy her mental health concerns.

**¶16** Though Mother engaged in services and made some progress, reasonable evidence supports the court's finding that she failed remedy the circumstances causing her children's out-of-home placement.[4]

*II. Best Interests*

**¶17** Mother also argues the superior court abused its discretion in finding that termination of her parental rights was in the children's best interests. Termination is in the children's best interests if they will benefit from termination or be harmed if termination is denied. *Alma S.*, 245 Ariz. at 150, ¶ 13.

**¶18** The superior court found the children's current placement was willing to adopt all four children and could provide them a stable home where their needs were met. Mother argues termination is not in the children's best interests as it could separate them from their youngest sibling.[5] Though termination of Mother's parental rights may separate the siblings, the court's primary concern must be the children's "interest in stability and security." *See id.* at 150, ¶ 12 (citations omitted). Termination here provides the children with a stable and secure home where all their needs are met. Additionally, four of the five siblings will remain together. Reasonable evidence thus supports the court's determination that the children would benefit from termination.

---

[4]     Mother also argues the superior court erred in terminating her rights under the nine-month out-of-home placement ground. A.R.S. § 8-533(B)(8)(a). Because we affirm the court's order based on the 15-month ground, we do not address the nine-month ground. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

[5]     G.L.G. is in the same placement as Mother's four oldest children, but her parental rights to him have not been terminated, leaving open the possibility G.L.G. may reunify with Mother and be separated from the other children.

¶19 Mother also argues the superior court erred in finding that because she had failed to remedy the circumstances causing their out-of-home placement, the children would be harmed if termination was denied. But as discussed above, reasonable evidence supports the court's 15-month out-of-home placement ground findings and Mother therefore has shown no abuse of discretion.

**CONCLUSION**

¶20 We affirm the order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA