NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO L.H.

No. 1 CA-JV 22-0218
FILED 3-28-2023

---

Appeal from the Superior Court in Maricopa County
No.  JD31039
JS21196
The Honorable Christopher Whitten, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee Department of Child Safety*

Cantor Law Group PLLC, Phoenix
By Nicholas Boca
*Counsel for Appellees/Intervening Paternal Grandparents*

_____

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Daniel J. Kiley joined.

_____

**C R U Z**, Judge:

¶1        L.W. ("Mother") appeals the superior court's termination of her parental rights to her daughter, L.H.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother's parental rights to L.H.'s sibling were terminated in 2016 due to Mother's substance abuse.  L.H. was born in 2017.  At the time of L.H.'s birth, both L.H. and Mother tested positive for methamphetamine.  The Department of Child Safety ("DCS") left L.H. in the home and implemented in-home services.

¶3        In August 2019, DCS learned Mother had been arrested for driving under the influence of unknown substances with L.H. in the car.  DCS continued in-home services.  In December 2019, Mother got into a car accident while under the influence of unknown substances with L.H. in the car.  L.H. was bruised and had abrasions on her right clavicle and was treated at a hospital.  That same month, DCS removed L.H. from Mother's care.

¶4        The superior court adjudicated L.H. dependent and adopted a case plan of family reunification.  The case plan required Mother to "successfully complete alcohol/substance abuse treatment and maintain . . . sobriety."  DCS put additional services in place, including substance abuse assessment and treatment at Terros, supervised visitation, parent aide services, and random urinalysis testing.

¶5        Mother reported that she had started using heroin and methamphetamine at the age of twenty, that she had a medical marijuana card, and that she had been on methadone treatment.  Mother admitted to her Terros therapist that she did not need a medical marijuana card but was addicted to marijuana.  In January and February 2020, Mother tested positive for fentanyl three times, methadone four times, and THC seventeen times.

¶6          Terros referred Mother for intensive outpatient treatment and then standard outpatient treatment, both of which she completed in 2020. Mother began individual therapy in May 2020.  From March to October 2020, Mother tested positive for THC thirty-six times.  Mother continued to test positive for THC in late 2020 and throughout 2021.  Mother successfully completed parent aide services in September 2020.

¶7          Mother completed a psychological evaluation in January 2021.  Dr. Stephanie Leonard diagnosed Mother with major depressive disorder, post-traumatic stress disorder, dissociative identity disorder, mild cannabis use disorder, severe opioid use disorder, and severe stimulant use disorder, amphetamine-type substance, in sustained remission.  Dr. Leonard opined that Mother could not safely parent a child because of her mental health symptoms and that the prognosis for Mother being able to provide minimally adequate parenting in the foreseeable future was poor.

¶8          In April 2021, Mother appeared at a court hearing impaired, and testified she had a hard time getting up that morning and had taken Lexapro, Gabapentin, Seroquel, methadone, and marijuana.  In October 2021, Mother tested positive for fentanyl, THC, and methadone.

¶9          In February 2022, during a supervised visit with L.H. and Mother's parents, Mother appeared to fall asleep and later screamed and cursed at her parents in front of L.H.  In March 2022, DCS learned that Mother had been going to multiple providers seeking medications and had not been truthful with the providers about what medications she was on. Both providers closed her out for that reason.

¶10          In March 2022, L.H.'s paternal grandparents petitioned to terminate Mother's parental rights to L.H. on grounds of fifteen months' time in care, substance abuse, and mental illness.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (8)(c).  DCS later became a co-petitioner.

¶11          In June 2022, the Terros crisis team responded to Mother's residence, and she reported that she had been assaulted by a third party and had relapsed with methamphetamine, fentanyl, and marijuana. Mother did not complete any drug tests that month and failed to call in to see if she was required to test.  In addition, Mother failed to show for an appointment for an updated psychological evaluation on June 4, 2022.  That same month, Mother's Terros counselor reported Mother was still receiving counseling for severe opioid use disorder and major depressive disorder

but had made "[n]o progress" and was "not using her coping skills to manage her mental health symptoms."

¶12           After a contested termination hearing in July 2022, the superior court terminated Mother's parental rights on the grounds of Mother's chronic substance abuse and mental illness, as well as the child's fifteen months' time in care.[1]  The court found that termination was in L.H.'s best interests, a finding Mother does not contest on appeal.  We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶13           Mother argues insufficient evidence supported the juvenile court's finding that termination was warranted under A.R.S. § 8-533(B)(8)(c).  The superior court may terminate parental rights under A.R.S. § 8-533(B)(8)(c) if DCS has made diligent reunification efforts, the parent has been unable to remedy the circumstances causing the parent's child to be in an out-of-home placement for fifteen months or longer, and "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."  We view the evidence and the reasonable inferences to be drawn from it in the light most favorable to affirming the superior court's order.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).  We will not reverse the superior court's order unless reasonable evidence does not support the superior court's factual findings.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶14           L.H. had been in an out-of-home placement for more than two and one-half years at the start of the termination adjudication hearing.  Mother argues insufficient evidence supports the court's findings that she had failed to remedy the circumstances causing L.H. to be in an out-of-home placement and that there was a substantial likelihood she would not be able to exercise proper parental care and control in the near future because she successfully completed parent aide services and had been working on her issues in therapy.

¶15           In making a determination that a parent has been unable to remedy the circumstances causing the child to be in an out-of-home

---

[1]       The superior court also terminated the parental rights of L.H.'s father, who is not a party to this appeal.

placement, we construe those circumstances to mean the circumstances existing at the time of the termination that prevented a parent from appropriately providing for the parent's child. *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007); *see also Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 17, ¶ 26 (App. 2019) (court must consider "*both the origin [of the dependency] and any cause arising during the dependency*").

¶16        Here, the superior court found that although DCS made diligent efforts to provide reunification services to Mother and Mother participated in most of those services, she was unable to remedy the circumstances causing L.H. to be in an out-of-home placement—her substance abuse and mental health issues.  The court found that although Mother had "largely participated" in reunification services, those services had "been unsuccessful in changing her behavior to the degree that [L.H.] could be safely placed back in her care."

¶17        Reasonable evidence supports the court's findings.  Although Mother completed outpatient drug treatment and parent aide services, she relapsed on fentanyl and methamphetamine in the month before trial and stopped participating in drug testing.  In addition, although Mother participated in individual counseling, she failed to make progress regarding her opioid use disorder and mental health issues, which Dr. Leonard opined in 2021 prevented Mother from safely parenting L.H.

¶18        Because sufficient evidence supported the superior court's finding that termination was warranted pursuant to A.R.S. § 8-533(B)(8)(c), we need not consider Mother's challenge to the alternate grounds of chronic substance abuse and mental illness.  *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

## CONCLUSION

¶19        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

5