NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.G.

No. 1 CA-JV 23-0209
FILED 5-14-2024

Appeal from the Superior Court in Maricopa County
No. JD41866
The Honorable Marischa Gilla, Judge

**AFFIRMED**

COUNSEL

Edward A., Phoenix
*Appellant*

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Advisory Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Thomas K. Sanders
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which
Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

**B A I L E Y**, Judge:

¶1          Edward A. ("Father")[1] appeals the termination of his parental rights to J.G.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          "We view the facts in the light most favorable to upholding the [superior] court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citation omitted).

¶3          Father and Shaquier G. ("Mother")[2] are the biological parents of J.G., born in January 2021.  In April 2022, the Department of Child Safety ("DCS") filed a dependency petition against Mother, alleging J.G. was dependent due to abuse or neglect.

¶4          DCS did not identify Father in its original dependency petition.  About a week later, DCS filed an amended petition that identified Father and alleged J.G. was dependent as to Father because he failed to provide for J.G.'s basic needs and had not established paternity or assumed parental responsibility.  Father's paternity test later established he is J.G.'s father.

¶5          Mother concealed J.G. from DCS, so DCS did not take custody of J.G. until August 2022.  A month later, the superior court found J.G. dependent as to Mother and Father.  Father did not contest the dependency.

¶6          DCS received reports Father committed domestic violence against two former partners and Mother.  The same month DCS took custody of J.G., DCS asked Father to self-refer to domestic violence counseling.  Father began domestic violence counseling more than a year later when he completed intake and one session, but missed the next five sessions.

¶7          DCS referred Father to a parenting skills program, provided visitation, and asked him to complete drug testing.  Father attended some

---

[1] Father's assigned counsel filed a brief avowing he reviewed the record and found no non-frivolous issue to raise.  We ordered assigned counsel remain appointed as advisory counsel, and Father filed a pro se brief.

[2] Mother is also known as Shaqvier G.  The superior court also terminated Mother's parental rights, but she is not a party to this appeal.

sessions but failed to complete the parenting program. Father began supervised visitation with J.G. in September 2022. Four months later, DCS authorized unsupervised visitation. Father participated in visitation until March 2023, when DCS received a report that Father allowed Mother to see J.G. during a visit. DCS had informed Father that Mother was not allowed contact with J.G. unless DCS supervised her. DCS reinstated supervised visitation, and Father stopped visiting J.G. Father's drug tests were negative, and DCS did not request additional testing.

¶8　　　　In July 2023, DCS moved to change the case plan from reunification to severance and adoption. The superior court granted DCS's motion. Later that month, DCS petitioned to terminate Father's parental rights on six- and nine-month out-of-home placement grounds. The court held a one-day contested severance hearing in October 2023.

¶9　　　　At the contested severance hearing, Father testified he could not find a domestic violence counseling provider that took his insurance, and he missed his counseling sessions because his phone would not connect to the virtual meetings. He denied committing domestic violence against Mother but admitted he went to jail for domestic violence against a former partner. He also denied allowing Mother to see J.G. and said he stopped visiting J.G. because he was "upset" with DCS. The DCS case manager testified Father's participation in some services was "very inadequate," and he refused to participate in other services. Father's parenting program practitioner testified he missed eleven of his eighteen sessions, she saw no demonstrative changes in his behavior, and his assessment scores declined during the program.

¶10　　　After taking the matter under advisement, the superior court found termination was in J.G.'s best interests and terminated Father's parental rights on both grounds alleged.

¶11　　　We have jurisdiction over Father's timely appeal under Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1), and Rule 601 of the Arizona Rules of Procedure for the Juvenile Court.

**DISCUSSION**

¶12　　　Father's opening brief does not comply with rules requiring citations to legal authority and the record. *See* Ariz. R.P. Juv. Ct. 607(b); ARCAP 13(a)(7)(A). We could conclude Father waived his arguments, *see State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9 (2004), but we choose to address the merits.

## I. Nine-Month Out-of-Home Placement Ground

¶13 To terminate parental rights, a court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B) and find by a preponderance of the evidence that termination is in the child's best interests. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted), we will accept its factual findings if supported by reasonable evidence and inferences, and we will affirm the order terminating parental rights unless it is clearly erroneous, *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023).

¶14 A court may terminate a parent's rights when: (1) "[t]he child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order"; (2) "the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement"; and (3) DCS "made a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8)(a).

¶15 Father does not dispute that termination was in J.G.'s best interests, that J.G. was in an out-of-home placement for nine months or longer, or that DCS made a diligent effort to provide him with appropriate reunification services, so we do not address those issues. *See Michael J.*, 196 Ariz. at 249, ¶ 13; *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 n.2 (App. 2010). Instead, Father appears to argue he remedied the circumstances causing J.G.'s out-of-home placement because he has a place to live, a job, a car, and childcare.

¶16 Whether a parent substantially neglected or wilfully refused to remedy the circumstances causing the child's removal "focuses on the level of the parent's effort to cure the circumstances rather than the parent's success in actually doing so." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 20 (App. 2007). DCS told Father he needed to have stable housing and employment to reunite with J.G. But DCS also told Father he needed to participate in the parenting skills program, domestic violence counseling, and visitation with J.G. And the superior court found Father substantially neglected or wilfully refused to remedy the circumstances causing J.G.'s out-of-home placement because he did not complete the parenting skills program, he refused to visit J.G., and he attended only one

domestic violence counseling session more than a year after DCS asked him to self-refer to counseling.

**¶17**        Reasonable evidence supports the superior court's findings. Father's parenting program practitioner testified Father missed most of his sessions and did not complete the program. Further, Father testified DCS asked him to self-refer to domestic violence counseling in August 2022, but he did not start counseling until more than a year later. When Father finally started counseling, he attended intake and one session and missed the next five sessions. Father said he could not find a provider that accepted his insurance, and he missed counseling sessions because his phone would not connect to the virtual meetings. But the superior court said it did not find Father's testimony credible because the court recommended a free counseling program, he attended intake and one session without issues, and the counseling center's records did not support his testimony. We do not reweigh evidence. *See Jordan C.*, 223 Ariz. 93, ¶ 18. Finally, Father testified he stopped visiting J.G. in March 2023 because he was "upset" with DCS for reinstating supervised visitation. Father's response to DCS's requirements is unacceptable for a parent.

**¶18**        Father does not dispute these findings, but he denies allowing Mother to see J.G. and claims DCS "intentional[ly] tricked" him into reinstating supervised visitation. The superior court acknowledged Father's denial but cited DCS's contradicting evidence. "The resolution of such conflicts in the evidence is uniquely the province of the [superior] court as the trier of fact," so we defer to the superior court's judgment. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002) (citations omitted). Moreover, nothing in the record supports Father's claim that DCS tricked him.

**¶19**        Reasonable evidence supports the superior court's finding that Father neglected or willfully refused to remedy the circumstances causing J.G.'s out-of-home placement. "If clear and convincing evidence supports any one of the statutory grounds on which the [superior] court ordered severance, we need not address claims pertaining to the other grounds." *Id.* at 280, ¶ 3 (citations omitted). Thus, we do not address the six-month ground.

    II.    Father's Other Arguments

**¶20**        Father argues the superior court judge "was unfair" and his attorney "refuse[d] to represent him." Father cites no evidence supporting

these arguments, and we find none in the record. Accordingly, we do not address them further.

¶21 Father also argues DCS accused him of drug and sex abuse "without pro[of]." DCS asked Father to complete testing to rule out substance abuse. But Father tested negative, DCS did not allege substance abuse as a ground for terminating his rights, and the court did not terminate his rights because of substance abuse. Further, the DCS case manager testified that DCS was not concerned about Father abusing substances. Thus, DCS did not wrongfully accuse Father of drug abuse, and the court did not terminate Father's rights because of drug abuse.

¶22 We also reject Father's argument we should reverse because of the sexual abuse allegation. After the contested severance hearing, but before the court issued its termination order, DCS filed an emergency motion to suspend Father's visitation because of reports that Father sexually abused J.G. The court granted DCS's motion to suspend visitation the day after it terminated Father's parental rights. But the subject of this appeal is the order terminating Father's parental rights, and the court did not reference sexual abuse in that order. Thus, Father's arguments are meritless.

**CONCLUSION**

¶23 We affirm.

